Good morning, Your Honors. I'm Phil Hantel. I represent Mr. Rodriguez-Rios. In preparing for this, I didn't notice much more that I had to add, I guess, as to my first argument. I'd just like to underline a few things relative to the withdrawal or the change of counsel motion that was originally filed well before trial. And I don't know if I made the point well enough in the papers, but I think that the crux of my argument was when a court is presented with a motion to withdraw by trial counsel early on in the proceedings, especially when we're talking about a Spanish-speaking defendant who's facing considerable amount of time, and we see that he ultimately got that considerable amount of time. I think the inquiry that the court made relative to the three-pong test laid out in Mills wasn't sufficient. And I don't think that – I think greater care needs to be taken relative to the language issues and the responses that were given by the defendant. And in my papers, and I noticed that the government also illustrated these things in their argument when they sort of outlined what the arguments were and what the defendant said. You know, he says things like counsel was not fighting for me and is not willing to take the case to trial. I think this is – you know, what I was trying to get at when I was talking to the – or when I was arguing to the trial court was that, you know, it's – clearly there was a breakdown in communications. Although it was a subtle one, it wasn't a complete I won't talk to you, but there was a certain amount of breakdown in communications. As I read the record, and you can correct me if I'm drawing the wrong inferences, you recommended to him that you take a plea. I can't find in the record precisely what the terms of the plea were. And he stubbornly and foolishly insisted on going to trial because he didn't trust you. I think that's correct. And I think that the plea was – obviously we see what the co-defendants' pleas were. And I – and my recollection is that our plea was in line with what the co-defendants' pleas were. There was nothing – So, I mean, the co-defendants are getting the maximum as 40 months or something, and your guy gets 22 years. Right. And I guess that's my – I guess that was – you know, when I was thinking about this and preparing for this, I think that the – you know, we have those three prongs that are set out in Mills. You know, the timeliness, adequacy of the inquiry, and extent of the conflict. And I would think that when we're looking at those things during trial, before trial, when we're in the plea negotiation process, early on in the case when the plea's been offered, that certainly there should be a greater inquiry or greater care. And I don't mean in a sort of a careful way, but a greater care as to what the situation is. Because at that time in the trial, it's critical, especially when you're faced with a defendant who has, you know, 11th grade education, is not an American, does not speak English, and is – you know, you're trying to communicate with this individual through an interpreter. And I think there's subtle nuances that are lost during those conversations. And when we have a case that's involving conspiracy and co-conspirator liability, especially in relation to the gun charge, you know, those things, I think, get lost. And that's where we get the comment, he's not willing to take the case to trial. I don't know that that was – certainly I don't believe I ever said I wouldn't take the case to trial. It may have been more subtle, like maybe it's not a good idea to take the case to trial. Mr. Hantel, I appreciate your client's concerns. I appreciate your concerns. But as you know, we're – this is not a perfect system. We're a bunch of humans trying to do the best we can within the limits and confines of the Constitution. I recently wrote a case called Thompson, where we had a guy that went back and forth and back and forth like seven times with respect to counsel. The court was very lenient, but it never got resolved. He was gaming the system. Now, your – in this case, I don't remember how many times it was, but I'm not saying your client was gaming the system. But the reality is, this is a trial judge. Trial judges act to the best of their ability. They have a hard job. And our review is for abuse of discretion. And with all due respect to you and your client, I don't know how you can say that the district court abused its discretion, in this case under the standard of Mendez-Sanchez. I mean, it's – there are three tests. Didn't the trial court meet those tests? I think to a certain level it did. But I think that the – I think the crux of my argument, and perhaps it – I guess maybe I'm getting at maybe a change in the test or a broadening of the test or a clarification of the test, especially when we're talking about someone who doesn't speak the English language and that it's early on in the trial. I certainly understand – and many of these cases that I read when I was trying to find case law to support my position are, you know, defendant moves to withdraw, you know, to change counsel two days before trial. And we understand that. There was a translator, was there not? There was a translator. And also my conversations with him in the lockup were also through a translator. So there was never sort of this me trying to expand. Aside from using a translator, is it your position that if someone speaks a language other than English that basically we should presume that there is no communication and that they can change trial counsel anytime they want to? No. And I think that that would be foolish for me to argue that here. I think that maybe what I'm trying to get at is maybe a, you know, especially when we have the early on request, when the plea negotiations are going in clearly, I think that communication becomes – the nuances, I should say, of communication become less and less important as the process goes on in the sense that, you know, if we're at trial, we know what the evidence is. And certainly he can express to me what his, you know, thoughts on the evidence are. But, again, I don't think that it's as important as when we're talking about very early on in the case. I think that that sort of lends itself against the idea that he's playing the system, as Your Honor had discussed, in the sense that, hey, we're not communicating. I don't understand the plea agreement. I don't understand the nuances. I don't think he's fighting for me. Whereas maybe a second attorney, maybe one that even speaks Spanish, and that might be something that the trial court considers, and there's a number of them in Phoenix, might better serve the defendant in this situation. We understand the difficulties that a client like this presents. I've had a few myself through the years. But specifically, what questions could the district court have asked that would have made it more clear, in your view? Well, and I think that that's probably the crux and the difficulty with this question, is that, you know, you have someone with an 11th grade education who doesn't speak the language, and here's this federal judge who scares me, in many instances when I'm before her, trying to inquire as to, what's the problem? Why do you need a new attorney? And, I mean, that's the question that she asked him. And I appreciate that there's a certain amount of, I don't want to say distaste, but disfavor of changing attorneys because we want to push these cases along. But at the same time, you know, the responses didn't quite seem to indicate that there was, in fact, a breakdown. And I think that the court, in a sense, glossed over that. But ultimately, if I understand the record correctly, your client indicated he didn't think you were willing to take the case to trial. The judge asked you whether you were. He said, no, no, I am willing. So if you really were concerned that there was a complete breakdown, which apparently there was not, it's just he wanted to do it a little differently than you did, why didn't you say, you know, Your Honor, this is just not going to work. We can't communicate. There's this example and this example and this example and this example, and we just can't do it. Instead, it seems like, based upon the record, that you very forthrightly and honestly explained what was going on. You did an exemplary job trying to do what the system required of you. Your client foolishly decided not to follow your advice. The world is filled with people who won't follow a lawyer's advice. Some of them regret it. Some of them are delighted. But it just depends on the situation. Right. And I think that that's, you know, and the reason I didn't lay out those things is because if they had been there, I would have laid them out. I mean, that's my duty to my client, obviously. But I think that, you know, I was trying to be as forthrightly as possible with the communication issues, and especially when he brought up I'm not willing to take the case to trial. In my mind, that was he doesn't think it's a good idea to take it to trial. But, again, I think that was and my point was in my papers is I think that that's one of the illustrations of how the communication was broken down, but it wasn't like we're not going to talk. Why don't we hear from the government? And you've got a minute or so in response for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, my name is Josh Parecki, and I'm an assistant United States attorney in the District of Arizona. Your Honors, this case really boils down to two issues. As we've already discussed with appellate counsel, first issue is whether the Court abuses discretion in denying the motion substitute counsel. I wanted to kind of highlight some of the comments that the Court has already made to the appellate counsel in this case, beginning with Judge Fletcher's comment that the defendant stubbornly and foolishly refused the plea agreement because he did not trust the defense counsel. Certainly, the government can't take issue with the notion that the defendant was stubborn and foolish and not accepting any kind of responsibility for his offense, as the Court clearly laid out during sentencing. But now you just changed it. You said in taking responsibility. I said in taking the plea. Well, I think there's a subtle difference, Your Honor, in this particular case, as is recognized by the district court. I would suggest, however, that his stubborn and foolishness was not simply because he didn't trust the defense counsel. I would suggest that his stubborn and foolishness was based on his assessment of the evidence, which was quite different than the weight of the evidence, which is what the defense counsel or appellate counsel was trying to point out to the defendant through the course of the plea negotiations and then prior to trial. And, again, is what the issue that the district court recognized, that this conflict was not about a complete breakdown of communication. It was about the appellate counsel's advice to enter into a plea agreement and the defendant or appellate's disagreement with the weight of evidence against him. And as Your Honor, Judge Smith pointed out, this is not an uncommon scenario where defendants, or in this case the appellate, disagrees with the weight of evidence against them and disagrees with the advice of counsel to enter into a plea agreement. And it's really that reason that the district court in this case really truly didn't abuse her discretion because she clearly focused the crux of the conflict on that. And she made it clear not once, but twice. First on January 23rd during the first hearing where she addressed the motion for substitute counsel that the conflict was based on this disagreement based on the weight of the evidence. And then a second time on the day of trial, the first day of trial on April 28th of 2009 when she again spoke with the defendant himself and the defendant insisted that the conflict was based on the weight of the evidence against him and not based on any kind of complete and total breakdown of communication. Well, I think that, as I read the record, the district court understood perfectly what the problem was and she said that's not enough. And yes, Your Honor, that's absolutely correct. And it's actually further belied by the conduct during trial because in this particular trial the defendant chose to take the stand. He trusted defense counsel enough. He trusted the communication between him and his defense counsel enough that he took the stand and allowed defense counsel to direct the stand. I don't know whether that was took the stand based on the advice or contrary to the advice of his counsel. Do you know that? I can't recall, Your Honor. Taking the stand might not be evidence of trusting his counsel. It may be evidence of disregarding his counsel once again. It's true. But defense counsel mounted a defense that's consistent with the ultimately it was consistent with the defendant's. So it's a choice once this client takes the stand. That's true. That's a good point. But again, I think that ultimately the way the trial unfolded indicated that there was at least a sufficient trust between or at least there was not sufficient evidence to evidence a complete breakdown. What do we do with the second argument that wasn't really addressed in the first part of the oral argument, but that is the disproportion between the sentence imposed here 22 years as distinct from the sentences pursuant to the plea bargain imposed upon those who were participants with him? Yes, Your Honor. A couple points to that. First, as has already been pointed out during the first part of the argument, the court is really in the best position, the district court is really in the best position to determine what the most reasonable sentence is, and especially this court because she sat through trial. But that said, Your Honor, in order to apply a sentencing disparity argument under 18 U.S.C. 3553A6, the court must consider unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. There are five reasons why this particular defendant was not similarly situated to his co-defendants. Reason number one, this defendant chose to go to trial. He exercised his constitutional right to go to trial. Isn't the most important issue here, though, the fact that this defendant had an extensive criminal history versus Mr. Flores Tirado who did not? I think that is one of the most important issues, and that's one of the most important issues the district court recognizes in exercising discretion. That's, in fact, the second reason why they're not similarly situated. Again, reason number three, besides criminal history and the fact the defendant chose to go to trial, this particular appellant was convicted of different offenses. Another, there are factual distinctions between this appellant's conduct and those of his co-defendants, including the person that had been identified as a leader in the early disposition of this case. In fact, the evidence overwhelmingly showed that it was the appellant who sat in the room with his gun pointed at the aliens and made significant threats to their lives throughout the course of their hostage situation in the room. There was no other evidence with respect to the co-defendants having that level of personal terrorization of the people that were being taken hostage. So, and in fact, the Court, and one further point, besides these, I don't think I got through all five of them, but I think Your Honors get the point. Also, kind of as in any event, 3553a6 is one of many factors the district court has to consider. And Mr. Flores-Torado's sentence is not the baseline for determining what a reasonable sentence is. It is one factor that the Court should have and did consider in this case, and ultimately providing for a disparate sentence. She weighed every one of the 3553 factors. She found certain disparities, as Your Honor, Judge Smith indicated, the criminal history and his complete and total lack of acceptance or responsibility. So ultimately, the Court and the record is clear with respect to these perceived disparities, although not properly based on 3553. This was a below-guideline sentence in any event, right? Significantly below-guideline sentence, Your Honor. The guidelines contemplated a life sentence plus seven years for the 924C. So I really have no further argument on these points unless Your Honors have anything from me. Okay. Thank you. Thank you. You've got about a minute for response. Relative to the second argument, and I think I tried to lay it out the best I could in the papers relative to the hostage-taking statute, and it was something that I argued at the trial court as well, was that the initial enactment of the hostage-taking statute was what we normally think of as hostage-taking, the, you know, sort of burglar sneaks in the middle of the night into the house and steals the daughter of the President and we have, you know, another episode of 24 that we can look at. Like a novel. Or a novel. You know, I mean, I think that that is originally what it was, and I think that's why the person is taken against their will and that sort of thing. And I think that what makes this sentencing disparity important or something to note was that, again, these are, you know, these people at some level agreed to be put up as collateral until their price is paid to get across the border. And for that reason, I think that the sentence was excessive, and also I think that that gives rise to the low end of the plea agreements that the other defendant said. And so that was the crux of my argument about why this was an excessive sentence. But the district court did take into account the disparity and reduced the sentence substantially. Your quarrel is just with the extent of the departure. Is that accurate? That would be accurate. Okay. Thank you. Thank you very much. Thank both sides for their helpful argument. I don't think it's going to be much comfort to your client, but you can tell your client that you did a very good job. Thank you very much. The case of United States v. Rodriguez-Rios is now submitted for decision.
judges: Todd, Fletcher W. , Smith M.